IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DOUGLAS FIELDS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. No. 07-748-SLR |
| | ) |
| PERRY PHELPS, Warden, | ) |
| and JOSEPH R. BIDEN, III, | ) |
| Attorney General of the State | ) |
| of Delaware, | ) |
| | ) |
| | ) |
| Respondents.¹ | ) |

Douglas Fields. Pro se petitioner.

James T. Wakley, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for respondents.

**MEMORANDUM OPINION**

August 12, 2008
Wilmington, Delaware

---

¹Warden Perry Phelps assumed office in January 2008, replacing former Warden Thomas Carroll, an original party to this case.  See Fed. R. Civ. P. 25(d)(1).

ROBINSON, District Judge

## I. INTRODUCTION

Currently before the court is petitioner Douglas Fields' ("petitioner") application for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. (D.I. 1) For the reasons that follow, the court will dismiss petitioner's § 2254 application as time-barred by the one-year period of limitations prescribed in 28 U.S.C. § 2244(d)(1).

## II. FACTUAL AND PROCEDURAL BACKGROUND

As summarized in the Delaware Supreme Court's decision regarding petitioner's direct appeal:

> At approximately 10:30 a.m. on Sunday, July 13, 2003, William Brown was riding a bicycle along East 23rd Street in Wilmington, Delaware. Two women, Neshe Jones and Vanessa Newman, stopped him and began arguing with him over ownership of the bicycle. Newman eventually went to her mother's house, which was nearby, but Jones continued to argue with Brown. The argument escalated, with Jones throwing a bottle at Brown and Brown throwing one at Jones.
>
> Without warning, a man, later identified as [petitioner], emerged from the residence at 3 East 23rd Street, took a handgun out of a bag he was carrying, walked up to Brown and started shooting. He shot Brown twice in the leg and then, as Brown lay on the ground, shot him a third time in the lower back. [Petitioner] was identified as the shooter by neighborhood residents William Caudle and Robert Jones.
>
> City of Wilmington police were patrolling the neighborhood in a marked police car at the time of the shooting. As the police approached the scene, Brown told them he had been shot by [petitioner], who by then was running back into the residence at 3 East 23rd Street. As Officer Michael Carnevale chased Fields into the house, [petitioner] fled out the back. Officer Robert Cassidy ran to the back of the house and saw [petitioner] running through the back yards down the street. Officer Carnevale began running parallel to 23rd Street to try to intercept [petitioner]. [Petitioner] turned into an alley and back out onto 23rd Street. He then ran into the residence at 22 East 23rd Street with Officer Carnevale behind him. Officer Carnevale captured [petitioner] as he attempted to open a locked back door, to exit from the kitchen. Vanessa Newman testified at trial that she and her mother lived at that address and that [petitioner] entered her house without her permission.

> A later search by City of Wilmington police of the portion of East 23rd Street where [petitioner] was running yielded a black knit hat containing a .38 revolver with black electrical tape around the handle. The gun contained three casings and three live rounds, indicating that three shots had been fired. Police were unable to obtain any fingerprints from the gun.

Fields v. State, 889 A.2d 283 (Table), 2005 WL 3200359 (Del. Nov. 28, 2005). In January 2004, a Superior Court jury convicted petitioner of first degree assault (as a lesser included offense of first degree attempted murder), possession of a deadly weapon during the commission of a felony, second degree burglary, possession of a deadly weapon by a person prohibited, and resisting arrest. The Superior Court sentenced petitioner as an habitual offender to a total of sixty-four years of imprisonment at Level V, suspended after sixty-one years for a term of probation to follow. Petitioner appealed, and the Delaware Supreme Court affirmed his convictions and sentences. Id.

Petitioner filed a motion for post-conviction relief pursuant to Superior Court Criminal Rule 61 ("Rule 61 motion") on December 8, 2007, which the Delaware Superior Court denied as non-compliant on December 14, 2006. See infra at note 4. Petitioner filed another Rule 61 motion on February 1, 2007, alleging that: (1) he should not have been sentenced as an habitual offender; (2) the Superior Court committed prejudicial error by instructing the jury on attempted first degree murder; (3) the gun was improperly admitted into evidence; (4) defense counsel provided ineffective assistance of counsel; (5) the second degree burglary charge should have been dismissed because it failed to provide the specific crime intended to be committed in the dwelling; (6) the State dismissed the only African American juror; and (7)

prosecutorial misconduct. State v. Fields, 2007 WL 1991182 (Del. Super. Ct. July 9, 2007). The Superior Court denied the ineffective assistance of counsel claim as meritless and the remaining claims as procedurally barred by Rule 61(i)(4) because the claims were previously adjudicated on direct appeal. Id. at *2. Petitioner appealed, and in November 2007, the Delaware Supreme Court summarily denied the appeal as untimely. Fields v. State, 2007 WL 3247268 (Del. Nov. 5, 2007).

Petitioner filed the pending § 2254 application in November 2007. The application asserts seven claims:[2] (1) there was insufficient evidence to support his convictions for possession of a deadly weapon during the commission of a felony and possession of a deadly weapon by a person prohibited; (2) the attempted murder charge, for which he was convicted of a lesser-included offense, was groundless; (3) he had permission to enter the residence at 22 East 23rd Street and had no intention of committing any crime once he entered the home, thus negating his conviction on the charge of second degree burglary; (4) the prosecutor committed misconduct; (5) defense counsel provided ineffective assistance; (6) he did not receive a fair trial because the jury did not contain any African-American jurors in his age bracket; and (7) the Superior Court improperly sentenced him as an habitual offender. (D.I. 1) The State contends that the court should dismiss the application in its entirety for being time-barred. (D.I. 10) Alternatively, the State argues that the petition does not warrant relief under § 2254(d)(1).

---

[2]The application lists eight separate claims, but the court has combined claims one and six because they essentially assert the same issue.

3

## III. DISCUSSION

### A. One-Year Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was signed into law by the President on April 23, 1996, and it prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners. 28 U.S.C. § 2244(d)(1). The one-year limitations period begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Petitioner's § 2254 application, filed in November 2007, is subject to the one-year limitations period contained in § 2244(d)(1). See Lindh v. Murphy, 521 U.S. 320, 336 (1997). Because he does not allege, and the court does not discern, any facts triggering the application of § 2244(d)(1)(B),(C), or (D), the one-year period of limitations in this case began to run when petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment, the judgment of conviction becomes final, and the one-year period begins to run, upon

4

expiration of the ninety-day time period allowed for seeking certiorari review in the United States Supreme Court. See Kapral v. United States, 166 F.3d 565, 576 (3d Cir. 1999); Jones v. Morton, 195 F.3d 153, 158 (3d Cir. 1999). Here, the Delaware Supreme Court affirmed petitioner's conviction and sentence on November 28, 2005, and he did not seek certiorari review. Therefore, petitioner's conviction became final on February 27, 2006.[3] Accordingly, to comply with the one-year limitations period, petitioner had to file his § 2254 application by February 27, 2007. See Wilson v. Beard, 426 F.3d 653 (3d Cir. 2005)(holding that Federal Rule of Civil Procedure 6(a) and (e) applies to federal habeas petitions).

Petitioner filed his habeas application on November 16, 2007,[4] more than eight months after the expiration of the limitations period. Thus, his habeas application is time-barred and should be dismissed, unless the time period can be statutorily or equitably tolled. See Jones v. Morton, 195 F.3d 153, 158 (3d Cir. 1999). The court will discuss each doctrine in turn.

### B. Statutory Tolling

Section 2244(d)(2) of AEDPA specifically permits the statutory tolling of the one-

---

[3] Because the last day of the appeal period actually fell on Sunday, February 26, 2006, the appeal period extends through Monday, February 27, 2006. Del. Supr. Ct. R. 11(a).

[4] Pursuant to the prison mailbox rule, a pro se prisoner's habeas application is deemed filed on the date he delivers it to prison officials for mailing to the district court, not on the date the application is filed in the court. See Longenette v. Krusing, 322 F.3d 758, 761 (3d Cir. 2003); Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998); Woods v. Kearney, 215 F. Supp. 2d 458, 460 (D. Del. 2002)(date on petition is presumptive date of mailing, and thus, of filing). The envelope containing petitioner's application states "in prison mail November 16, 2007." (D.I. 1). Therefore, the court adopts November 16, 2007 as the date of filing.

year period of limitations:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending should not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). A properly filed state post-conviction motion tolls AEDPA's limitations period during the time the action is pending in the state courts, including any post-conviction appeals. Swartz v. Meyers, 204 F.3d 417, 424-25 (3d Cir. 2000).

Here, petitioner filed a Rule 61 motion on February 1, 2007, and the Superior Court denied the Rule 61 motion on July 9, 2007.[5] Although petitioner appealed the Superior Court's decision, the Delaware Supreme Court denied the appeal as untimely because petitioner did not file his notice of appeal until August 10, 2007, two days after

---

[5]In its answer, the State asserts that petitioner filed his Rule 61 motion on February 1, 2007. (D.I. 10, at p.5) This statement does not explain the entire situation. Although Entry Number 50 (dated February 1, 2007) on the Delaware Superior Court Criminal Docket states that petitioner filed a pro se Rule 61 motion, Entry Number 49 (dated December 14, 2006) on the same docket states that a notice of non-compliance to Rule 61 was sent to petitioner because a Rule 61 motion he filed did not contain an original signature. The docket does not indicate the date on which petitioner filed the non-compliant Rule 61 motion, but the Superior Court, in its July 2007 decision denying petitioner's Rule 61 motion, stated that the Rule 61 motion was filed on December 8, 2006.
    As a general rule, a non-compliant Rule 61 motion will not trigger statutory tolling under § 2254(d)(2) because it does not constitute a properly filed Rule 61 motion. See Austin v. Carroll, 224 Fed. Appx. 161 (3d Cir. Feb. 27, 2007). Therefore, the court concludes that the non-compliant Rule 61 motion filed on December 8, 2006 does not trigger the statutory tolling doctrine, and that any tolling under § 2254(d)(2) actually started on February 1, 2007, when petitioner properly filed a Rule 61 motion.
    However, even if the Superior Court's statement that the Rule 61 motion was filed on December 8, 2006 should construed as a waiver of petitioner's non-compliance with Rule 61, and an indication that the Superior Court accepted and considered the non-compliant Rule 61 motion as filed on December 8, 2006, the extra tolling due to using this earlier filing date still would not render the application timely. For example, on December 8, 2006, 283 days of AEDPA's limitations period had already lapsed. The limitations clock would have started to run again on August 9, 2007, and it would have run without interruption until it expired on October 29, 2007.

the thirty-day appeal period had expired. In this situation, the Rule 61 motion tolls the limitations period from February 1, 2007 through August 8, 2007; the time during which petitioner's post-conviction appeal was pending in the Delaware Supreme Court is not included in the tolling computation. See Merritt v. Blaine, 326 F.3d 157, 165 (3d Cir. 2003).

When petitioner filed his Rule 61 motion, 339 days of AEDPA's limitations period had already lapsed. The limitations clock started to run again on August 9, 2007, and ran without interruption until it expired on September 4, 2007.[6] Hence, statutory tolling does not render petitioner's application timely.

### C. Equitable Tolling

The court may toll AEDPA's limitations period for equitable reasons if petitioner's case is "the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999). The Third Circuit has identified three situations in which equitable tolling may be warranted:

> (1) where the defendant actively misled the plaintiff;
> (2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or
> (3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

Jones, 195 F.3d at 159; Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616 (3d Cir. 1998); Thomas v. Snyder, 2001 WL 1555239, at *3-4 (D. Del. Nov. 28, 2001). However, equitable tolling will only be warranted if petitioner demonstrates that he

---

[6]The limitations period actually expired on September 3, 2007, which fell on the federal holiday, Labor Day. Therefore, the limitations period extended through Tuesday, September 4, 2007. Fed. R. Civ. P. R. 6(a)(3).

"exercised reasonable diligence in investigating and bringing [the] claims" and that he was prevented from asserting his rights in some extraordinary way; mere excusable neglect is insufficient. Miller v. New Jersey State Dept. of Corrs., 145 F.3d 616, 618-19 (3d Cir. 1998); Schlueter v. Varner, 384 F.3d 69, 77 (3d Cir. 2004).

In this case, petitioner does not allege, and the court cannot discern, that any extraordinary circumstances prevented him from timely filing the instant habeas application. To the extent petitioner made a mistake or miscalculation regarding the one-year filing period, that mistake does not warrant equitably tolling the limitations period. See Simpson v. Snyder, 2002 WL 1000094, at *3 (D. Del. May 14, 2002). Accordingly, equitable tolling is not warranted, and the court will dismiss petitioner's habeas application as time-barred.

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 application, the court must also decide whether to issue a certificate of appealability. See Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

If a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a

8

constitutional right; and (2) whether the court was correct in its procedural ruling. Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Id.

The court finds that petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is time-barred. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, petitioner's application for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.